FILED

NOV 30 2007
CLERK'S OFFICE
U. S. DISTRICT COURT
EASTERN MICHIGAN

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

            **Plaintiff(s),**         **CASE NUMBER: 03-80244
                                       HONORABLE VICTORIA A. ROBERTS**

v.                                     **FILED UNDER SEAL**

**D-3 ALLEN OZDEMIR,**

            **Defendant(s).**
_____/

**ORDER**

**I.     INTRODUCTION**

This matter is before the Court on Defendant Allen Ozdemir's Motion For

Hearing Regarding Plea/Sentencing Agreement. Defendant requested an evidentiary

hearing to determine whether the Government made certain promises prior to his guilty

plea which were not in his plea agreement or disclosed during the plea hearing, and

whether the Government breached the alleged promises. As a remedy, Defendant

initially asked to either withdraw his plea or be sentenced by a different judge.

However, it is presumed that Defendant no longer wishes to withdraw his plea,

inasmuch as he opposed the Government's motion to vacate the plea agreement and

guilty plea.

The Court held an evidentiary hearing over three days between December 8,

2006 and February 7, 2007.

**II.    BACKGROUND**

1

Defendant was charged with: 1) Conspiracy to Distribute more than 1000 kilograms of Marijuana, in violation of 21 U.S.C. §§841(a)(1) and 846, and 2) Conspiracy to Obstruct a Criminal Investigation by Bribery, in violation of 18 U.S.C. §§1510(a) and 371. Pursuant to a Rule 11 plea agreement, Defendant pled guilty to Count I and the Government dismissed Count II. In the Rule 11, the parties agreed that the guideline range is 292-365 months and that a sentence within that range is appropriate. Defendant is subject to a mandatory minimum sentence of 120 months, pursuant to 21 U.S.C. §841(b)(1)(A).

The Court accepted Defendant's plea on November 30, 2004. Assistant United States Attorney ("AUSA") William Sauget appeared for the Government. During the plea colloquy, Sauget advised the Court that although Defendant's cooperation was not addressed in the Rule 11, the Government agreed to make a FRCrP 35 post-sentencing motion for reduction in Defendant's sentence ("a Rule 35 motion") once his cooperation is complete:

> Although this particular Plea Agreement does not address the issue of cooperation, I want the Court to understand that the Government is intending to come back at some point [in] time subsequent to this Defendant's sentence and request a reduction of that sentence pursuant to Rule 35 of the Federal Rules of Civil Procedure. I realize under Rule 35(a) there's a window of one year in which the Government can file that motion subsequent to sentencing. If in fact the Defendant's cooperation has not been completed within that one year, I want the Court to understand it's my personal policy to file what I refer to as a protective Rule 35 motion. That meaning the motion would be filed within the one-year period and we would request the Court to withhold a hearing on that particular motion until the Defendant's cooperation has been completed.
>
> I want the Court to also understand this particular Defendant has already embarked on some cooperation. We intend to explore that cooperation fully subsequent to his being sentenced and pleading

2

guilty here today.

Plea Tr. at 14-15. Sauget further confirmed defense attorney Suzanna Kostovski's

assertion that he and the Chief of the Criminal Division, Alan Gershel, agreed to

request a greater Rule 35 sentence reduction than is typical, and that the United States

Attorney, then Craig Morford, assured him that the Government "would be as generous

as possible":

Ms. Kostovski: Your Honor, just one further clarification
regarding the Rule 35. Mr. Sauget indicated
during a meeting that I had with him and Mr.
Gershel from his office that they have obtained
approval from the U.S. Attorney to file a motion
to get as much reduction on the Rule 35 as
opposed to the standard reductions that
normally take place on a Rule 35. So, I just
want that clear for the Court.

Mr. Sauget: Your Honor, I think I can make a statement.
Generally speaking on a Rule 35 motion, it's my
office's policy to give very reduced
recommendations for that type of motion. In a
case like this where Defendant is looking at
these types of Guidelines, I've had an
opportunity to discuss this matter with the United
States Attorney himself and he's assured me
that notwithstanding whatever we normally do
with regard to Rule 35s, we would be as
generous as possible with regard to these types
of instances where people are looking at
substantial times of incarceration.

Id at p.18. Sauget further stated that he believed that a recommendation greater than

the typical 12 to 16 month recommendation is appropriate "given what I already know

the Defendant knows." Id. However, Sauget declined to commit to a particular

sentence because of "other things that factor into a substantial assistance departure,

not the least of which is testimony." Id at 18-19. Sauget also advised that neither he

3

nor Gershel discussed a specific sentence reduction with Kostovski, and she agreed that this was true. *Id* at 19.

The Court asked Defendant whether any promises other than those set forth in the Rule 11 and represented by Sauget were made to induce his plea. Defendant denied any other promises beyond what Sauget explained. *Id* at p. 20. Neither Kostovski nor Sauget advised the Court otherwise.

Despite the parties' agreement in the Rule 11 that neither would seek, recommend, or advocate for a sentence outside of the range agreed upon, both parties filed motions for downward departure. The Government filed a U.S.S.G. §5K1.1 motion recommending a sentencing range of 204 to 255 months. Defendant submitted a sentencing memorandum in which he requested downward departure on multiple grounds and set forth several factors for the Court to consider under 18 U.S.C. §3553(a). In subsequent briefs, he asked that the Court depart to the mandatory minimum sentence of ten years.

The Court directed the Government to file a response to Defendant's memorandum; it specifically asked the Government to address the alleged disparities in the Government's sentencing recommendations for Defendant and Co-Defendant Dale Sokolov. The Government filed a response brief which, *inter alia*, disputed: 1) certain of Defendant's factual assertions; 2) Defendant's characterization of the extent and nature of his involvement in the drug conspiracy; and 3) Defendant's characterization of the extent of his cooperation with the Government relative to his Co-Defendants. The Government also urged the Court not to depart further than the range recommended in its 5K motion.

4

Defendant contends the Government violated oral promises it made to induce him to enter a plea but which were not included in the Rule 11 or disclosed to the Court during the plea hearing. Specifically, Defendant says that over a period of months and multiple discussions with him and his attorneys Sauget promised: 1) that Defendant's original sentence would include a substantial departure (presumably via a 5K motion) to 10 to 12 years; 2) the Government would not oppose Defendant's request at sentencing for a reduction to the mandatory minimum; and 3) to file a Rule 35 motion which would permit a substantial departure below the mandatory minimum. Defendant also asserts that the Government's sentencing memo violates *Kastigar v United States*, 406 U.S. 441 (1972), because it includes information derived from immunized debriefings. And, he argues that the Government's actions demonstrate prosecutorial vindictiveness.

A summation of the relevant testimony offered in support of and opposition to Defendant's motion is necessary.

### A.    Initial Plea Negotiations

Attorney Walter Nash represented Defendant when he was first indicted in early 2004 until approximately August 2004. During Nash's representation, Defendant began cooperating with the Government pursuant to a *Kastigar* agreement. Nash attended three or four debriefings. Sauget, along with other Government representatives, was present at each. After the first debriefing, Nash says he understood that Sauget contemplated filing a 5K motion with a sentence recommendation of 10 to 12 years, as well as a 18 U.S.C. §3553(e) motion, which would permit Defendant to argue for a sentence below the mandatory minimum at the initial sentencing. Evid. Hrg. Tr., Vol. 1 at 16-17, 74-75. Apparently referring to himself, Sauget and perhaps Defendant, Nash

5

says "we all recognized that I would be free to argue for a sentence below [10 to 12 years]." *Id* at 18. But, Nash says Sauget advised that his proposed offer was subject to supervisory approval, and Nash understood that the Government would oppose any sentencing request below its recommended range. *Id* at 15,18. Nash said he initially asked Sauget not to tell Defendant he anticipated a sentence of 10 to 12 years, but that Defendant became aware during later debriefings at which Sauget was present. *Id* at 18-19.

Early in his and Defendant's discussions with Sauget, Nash says Sauget advised that he would recommend a 60-month sentence for Co-Defendant Sokolov, but that Defendant should not expect the same deal because of the Government's perception that Sokolov is less culpable than Defendant. *Id* at 36-38.

As things progressed, Nash says the debriefings went well and he and Sauget discussed the possibility that Sauget would make an even more favorable recommendation than had been discussed to that point. *Id* at 44-45, 56. Nash says he and Sauget did not have further discussions regarding whether Sauget's proposed offer was approved. *Id* at 58. But, Sauget never indicated that approval was denied. *Id* at 44.

In July or August 2004, Defendant hired Kostovski as co-counsel and, shortly thereafter, discharged Nash. Despite the favorable tenor of plea discussions up to that point, Nash says there was no firm plea agreement and that he told Kostovski as much. *Id* at 58-59, 77. Nash says he told Kostovski that, subject to supervisory approval, Sauget was considering filing 5K and §3553(e) motions and recommending a 10 to 12

6

year sentence, and that the possibility of lowering the forfeiture amount (from $1 million) was an open issue. *Id* at 77. Nash said he never had a discussion with Sauget about whether he (Sauget) would stand mute at sentencing, and that he never told Kostovski that any such promise was made. *Id* at 24, 75.

## B. Continuing Negotiations and the Plea

Kostovski testified that Sauget promised to make a 5K recommendation of 10 to 12 years during a meeting she and Defendant had with Sauget and case agent Eric Elliott on September 14, 2004. Kostovski says neither Nash, Sauget nor Defendant told her the proposed 5K recommendation was subject to supervisory approval. Evid. Hrg. Tr., Vol. 1 at 70.

With regard to Sauget's alleged promise to stand mute, Kostovski agrees that she and Nash never discussed whether the Government would oppose Defendant's request for a lower sentence than recommended. *Id* at 80. But, during the September meeting with Sauget, she says he promised not to oppose anything in Defendant's sentencing memorandum, including a request for a reduction as low as probation. *Id* at 72-73. No agreement was reached regarding the forfeiture amount during that meeting. Kostovski says she asked that Sauget put his alleged promises in writing, but he declined saying he had been "burned" in other cases when he had to "reveal it to the other side." *Id* at 114. Kostovski says she did not understand what Sauget meant or to whom he referred.

A couple of weeks later, Kostovski says Sauget notified her that a change in the Government's policies prohibited him from making a 5K motion as promised. So, in an

effort to salvage the agreement, Kostovski requested a meeting with Gershel. During the meeting (at which, Sauget, Elliot, and AUSA Lee Janice were also present), Kostovski says Gershel agreed that the Government would file a "special" Rule 35. *Id* at 118-119. Kostovski testified that she interpreted the promise of a "special" Rule 35 to mean that the Government would make a greater sentence recommendation than is typical, and specifically that it would use the Rule 35 as a means of honoring the initial agreement to file a 5K motion for downward departure to 10 to 12 years. *Id* at 119-125. Kostovski admitted that Gershel never explicitly said the Rule 35 would effectively revive the 5K, but she testified that such an agreement was implicit because Gershel knew the initial 5K was to be for 10 to 12 years and that the purpose of their meeting was to "reinstate" that agreement. *Id.* Kostovski says she and Gershel did not reach an agreement on the forfeiture amount, but there was an understanding that Defendant wanted to pay the same amount imposed on Sokolov--$500,000. *Id* at 120.

Defendant entered a plea on the day trial was scheduled to begin, November 30, 2004. Sauget presented Defendant and Kostovski with the written plea agreement in the lockup that morning. Kostovski offered somewhat conflicting testimony about what sentencing expectations she discussed with Sauget during that meeting. When asked about the discussions they had about entry of the plea and the sentence she thought would be imposed, Kostovski said "[i]t was the same discussions we had had all along; the 10 to 12, the -- again I reiterated to Mr. Sauget my concern about the forfeiture amount and I believe that was left out of the Plea Agreement because again I said I want Mr. Ozdemir to be viewed by the Court the same as Mr. Sokolov." *Id* at 88-89. Kostovski then said, however, that she asked Sauget for the "Sokolov deal," which

8

included a 60 month (or 5 year) sentence: "I indicated my concern again to Mr. Sauget that I wanted the same deal that Mr. Sokolov had, the same sentencing recommendation, the same forfeiture amount, because as I said I didn't want the Court to be left with the impression that Mr. Ozdemir was the most culpable of all the individuals in this case." *Id* at 89-90. Kostovski first said Sauget's response to both requests was that "everybody [would] be happy" as long as Defendant did a "bang up job" before the Grand Jury. *Id* at 89-90. But, she later said Sauget did not say "yes" or "no" to her request for the "Sokolov Deal":

> Q (the Court): [W]hen you said to Mr. Sauget that you expected
> your client to get the same deal Sokolov got, did he ever say yes or .
> . . did he say anything in response to that?
>
> A: Well, he didn't say yes, Your Honor, but he didn't say no either.

*Id* at 148.

Kostovski's testimony concerning her ultimate expectation as a result of the lockup discussion is also unclear. Kostovski said she expected a 5K while also acknowledging that the 5K offer had been withdrawn, and that she expected Sauget to file a Rule 35 motion with a sentence recommendation of 10 to 12 years:

> Q: Did you have any expectation what the position was that the
> Government was going to take at the time of sentencing?
>
> A: My expectation was that [the Government] was going to live
> up to the agreement that they had said all along in this case;
> that they were going to file at least a 5K, subsequently a Rule
> 35 if -- because the 5K had been taken away, that they were
> going to make their recommendation of 10 to 12. We could
> argue -- we meaning the Defense, we could argue for
> anything we wanted beyond their recommendation. That was
> my expectation.

*Id* at 91.

9

Kostovski said the forfeiture amount was not resolved during the lockup meeting, and that she does not recall any discussion (then or at any time other than the September meeting) about whether Sauget would oppose any request in Defendant's sentencing memo. *Id* at 90; Kostovski Aff., August 10, 2006, at ¶5.

Kostovski says she did not think it was necessary to reveal the Government's alleged promises to the Court during Defendant's plea because of her "understanding" with Sauget regarding the Rule 35 which was reaffirmed in the lockup that morning. Evid. Hrg. Tr., Vol. 1 at 141-142. And, Kostovski says she suggested that the full extent of the agreement and reference to Defendant's cooperation be omitted from the Rule 11 out of concern for Defendant's safety. Kostovski Aff., August 10, 2006, at ¶¶2-3.

### C.    Defendant's Testimony

Defendant testified that he entered a plea with the expectation that the Government would recommend (via a Rule 35) that he receive the same sentence offered to Sokolov--60 months and a forfeiture amount of $500,000. Evid. Hrg. Tr., Vol. 2 at 79, 84. Defendant said that his understanding was based upon his and Kostovski's meeting with Sauget in the lockup on the day of his plea when Sauget presented the proposed Rule 11. Per Defendant, Sauget said the United States Attorney authorized a "very special" Rule 35 motion which Sauget implied would consist of a recommendation for the same sentence and forfeiture amount offered to Sokolov. That is, in response to Kostovski's assertion that Defendant would only be happy if he got the same deal as Sokolov, Defendant says Sauget showed him Sokolov's plea agreement and said Defendant would be "very, very happy" as long as he did a "bang up job" in his Grand Jury testimony against other Co-Defendants. *Id* at 21-24.

Defendant says he also believed Sauget's comment meant that his cooperation obligations ended with his Grand Jury testimony. *Id* at 69-70. During the same meeting in lockup, Defendant says Sauget reaffirmed his alleged promise in September 2004 not to oppose a sentencing memo filed on Defendant's behalf. *Id* at 15, 25.

Notably, Defendant's testimony at the evidentiary hearing directly contradicts his testimony before the Grand Jury in April 2005. In response to questions from Sauget, Defendant told the Grand Jury that no promise was made regarding a specific sentence and he affirmed his understanding that the Government's sentence reduction recommendation would be in the form of a Rule 35. Gov. Exh. 9 at 6-7. Defendant testified that he did not reveal the alleged promise that he would get the "Sokolov deal" because he thought the fact of the deal was encompassed in Sauget's assertion before the Grand Jury that the Government "will exercise a good faith effort . . . to get [him] the best possible reduction it can[.]" *Id* at 7; Evid. Hrg. Tr., Vol. 2 at 71-72.

Kostovski also contradicts Defendant regarding Sokolov's plea agreement. In an affidavit submitted after the hearing, Kostovski says she showed Defendant the Sokolov plea agreement in the lock up. Kostovski Aff., April 14, 2007 at ¶2. She does not say whether Sauget was even present at that time.

### D.     Post-Plea Negotiations

In December 2004, Defendant hired Frank Eaman to handle post-plea sentencing issues. Eaman acted as co-counsel with Kostovski, but handled most of the sentencing interactions. Eaman said he understood from his discussions with Nash and Kostovski that Sauget offered at the beginning of the case to allow a plea in the

11

range of 10 to 12 years with a Rule 35 that would allow a sentence below the mandatory minimum. Evid. Hrg. Tr., Vol. 1 at p. 162-163. Eaman was not of the impression that a 5K was still on the table at the time of the plea or when he became involved, but says he understood from Kostovski that Sauget still contemplated filing a Rule 35 motion with a sentencing recommendation of 10 to 12 years and that the Court would have the freedom to go lower. *Id.* Eaman says Kostovski told him the Government's agreement to move for a "downward departure" was omitted from the Rule 11 in order to conceal Defendant's cooperation. *Id* at 154-155.

Eaman and Defendant met with Sauget for the first time in January 2005. During that meeting, Eaman said Sauget told Defendant he would file a "motion for downward departure" and then "stand back" after Eaman filed a sentencing memorandum. Sauget allegedly said:

> What's going to happen in this case is I'm going to file a Motion for Downward Departure on your behalf. Then your attorney . . . is going to file a dynamite Sentencing Memorandum in this case. . . . [A]nd I'm going to stand back and . . . the Judge will be free to go wherever she wants to go.

*Id* at 158-159. Eaman says Sauget made a similar promise during a second meeting, stating either that he "won't get in [Defendant's] way" or "won't stand in front of [Defendant]." *Id* at 167. Eaman claims he took Sauget's comments to mean that Sauget would not oppose any sentencing request Defendant makes. *Id* at 158-159.

Notably, although Eaman testified that he *interpreted* Sauget's comments to mean that he would not oppose any sentencing request, in an affidavit filed prior to the evidentiary hearing Eaman claimed that Sauget explicitly said that he would not oppose

12

any sentence Defendant requests:

> Beginning in January of 2005, Mr. Sauget . . . told me on several
> occasions that, because of Mr. Ozdemir's cooperation: (1) he would
> file a downward departure motion, (2) I could file a "dynamite"
> sentencing memo where I "swing for the bleachers" and ask for a
> lower sentence than he asked for, (3) he would not oppose whatever
> we asked for and (4) the judge would be free to go as low as she
> wanted.

It is not clear what prompted Sauget's alleged January comments. Eaman said

Sauget did most of the talking and directed his statements mostly to Defendant

because Defendant was upset that he had agreed to such a high sentencing range and

that he was responsible for such a high quantity of marijuana. *Id* at 158. Eaman says

"we" were debating whether or not to withdraw the plea based on ineffective assistance

of counsel. *Id.* But, he does not indicate whether he is referring to a debate in the

presence of or with Sauget, or strategy he and Defendant were contemplating. So, it is

not clear whether Eaman is asserting that Sauget was aware Defendant considered

withdrawing his plea and was trying to dissuade him from doing so.

In another meeting or conversation, Eaman says Sauget offered to file a 5K and

a Rule 35. But, he says Sauget would not commit to filing a §3553(e) motion; Sauget

said he only had authority for a 5K with a recommendation for a 30% reduction. *Id* at

161, 164. So, Eaman says he planned to argue for the mandatory minimum at the

initial sentencing, and for a sentence below the mandatory minimum when the Rule 35

was filed. *Id* at 162, 167, 225. Beyond the 5K, Eaman says Sauget never made a

specific promise about the sentence he would recommend. *Id* at 161, 167.

Kostovski testified that she was stunned when Sauget filed the 5K because she

thought it was "off the table," and because a 30% reduction was less than she expected

13

if a 5K was going to be filed inasmuch as 30% would not get Defendant to the 10 to 12 year range. *Id* at 95-96. Kostovski apparently was also surprised that the Government would not file a §3553(e) motion along with the 5K. Although she never discussed it with Sauget when the 5K was still on the table, Kostovski says she assumed (based on past experience in other cases) a §3553(e) motion would accompany a 5K motion. *Id* at 96-98.

Eaman said the forfeiture amount was still an open issue when he was hired. *Id* at 165. Ultimately, he and Sauget agreed on $675,000, which Eaman says was the amount Sauget said Sokolov would pay. *Id*. However, Eaman says Sauget never made a commitment to him that Defendant would get a sentence of 60 months as promised to Sokolov. *Id* at 166.

Eaman asserts that Sauget's filing of a response to Defendant's sentencing memorandum was contrary to Sauget's promise during their meetings that he would not take a position at sentencing. *Id* at 172-173. And, after the Response was filed, Eaman says he learned from Kostovski that Sauget made the same promise prior to Defendant's plea. *Id* at 174. Moreover, Eaman says the Response is riddled with factual inaccuracies and information revealed during the *Kastigar* debriefings.

### E.    Sauget's Testimony

Sauget disputes many of Defendant and his attorneys' representations. He first says the only time a possible sentence recommendation was discussed was at the second debriefing in July 2004. Sauget says Nash and possibly Kostovski were present. Outside of Defendant's presence, Sauget said he informed Nash the

14

Government was looking for a $1 million forfeiture. Nash then asked for Sauget's impression of where they were headed with respect to sentencing. Sauget says he told Nash, "[m]aybe at the end of the day, assuming that [Defendant has] done everything he's supposed to, including the testimony against the Mexican suppliers, maybe 10 to 12 years . . . but, I don't know if I can get authority to do that from my front office." Evid. Hrg. Tr., Vol. 2 at 102,105. *See also* Evid. Hrg. Tr., Vol. 3 at 105. Sauget says he did not at that time plan to file a §3553(e) motion and he did not have a discussion about a Rule 35 motion until months later after Nash was discharged. Evid. Hrg. Tr., Vol. 2 at 103. Agent Elliott was present for the conversation between Sauget and Nash and he testified consistently with Sauget. Evid. Hrg. Tr., Vol. 3 at 57-58.

Sauget denies that there were any plea discussions during his meeting with Defendant and Kostovski in September 2004. *Id* at 206. Sauget says he and Agent Elliott visited Defendant for the sole purpose of advising him that the Government would not agree to bond. *Id* at 111-113. During the meeting, Sauget said he also questioned whether Defendant intended to continue cooperating and, although Kostovski assured Sauget that Defendant wanted to continue, he suggested that Defendant give it some thought and contact him the following Monday. *Id* at 113-114. Agent Elliott corroborates Sauget's recollection of events. Evid. Hrg. Tr., Vol. 3 at 66-68.

Sauget says he did not hear from Kostovski again until mid-October. Evid. Hrg. Tr., Vol. 2 at 114-115. Sauget says he told her that he would not offer Defendant a 5K in exchange for Defendant's cooperation because Defendant waited too long, trial was imminent and most of the Co-Defendants had pled. *Id* at 115-116.

The November 19, 2004 meeting with Kostovski, Gershel, Sauget, Elliot and

Janice came about, per Sauget, because he suggested that Kostovski speak with Gershel after she complained about Sauget's failure to offer a 5K. *Id* at 118. During the meeting, Sauget says Gershel confirmed that a 5K would not be offered but left the door open for a Rule 35. *Id* at 121. Sauget says Kostovski pushed Gershel to tell her what reduction he would recommend, but Gershel declined saying he could only speculate. Sauget says there was never any discussion about a 10 to 12 year deal, and Kostovski did not mention Defendant's desire for a sentence comparable to Sokolov's. *Id* at 123.

Gershel and Elliott's testimony about the meeting was consistent with Sauget's. Gershel says he told Kostovski that a 5K would not be offered because the Government did not expect that Defendant could offer substantial assistance in his case. Evid. Hrg. Tr., Vol. 3 at 9-10. But, Gershel said he told Kostovski that there were two related investigations with which Defendant might be able to assist at a later date for Rule 35 consideration. *Id* at 9-10, 42. Gershel additionally says he never promised or authorized a "special" Rule 35, and, in fact, that the term has no meaning to him. *Id* at 12, 29.

Sauget's recollection of the November 30, 2004 meeting in lockup differs significantly from Kostovski and Defendant's. Sauget says he reviewed the plea agreement with Defendant and explained that he (Sauget) could make a post-sentencing Rule 35 motion. Evid. Hrg. Tr., Vol. 2 at 124, 126-127. Sauget says neither Defendant nor Kostovski asked for the "Sokolov deal" during the meeting and he did not bring it up. *Id* at 127. Sauget said he did not bring Sokolov's plea agreement into the

16

lockup or show it to Defendant. *Id* at 129. Rather, Sauget said he gave Kostovski a copy of Sokolov's agreement on November 17 as part of discovery. *Id* at 129. He could not recall whether she brought it into the lockup. *Id*. Agent Elliott testified that neither Sauget nor anyone else showed Defendant a copy of Sokolov's plea agreement, and that there was no discussion about whether Sauget would oppose Defendant's sentencing memorandum. Evid. Hrg. Tr., Vol. 3 at 64, 72. With respect to Defendant's plea agreement, Sauget said that it did not make reference to Defendant's cooperation because he was no longer cooperating at that time and it was unclear whether he would provide additional cooperation; there was no request from Kostovski that cooperation references be omitted. *Id* at 228; Evid. Hrg. Tr., Vol. 3 at 104.

Sauget says he did not intend with his statements on the record during the plea hearing to commit to filing a Rule 35 motion, because he did not have authority to do so; he must get supervisory authority to file a Rule 35 motion. Evid. Hrg. Tr., Vol. 3 at 101. Sauget says he was only trying to assure Defendant that he would try to get the best possible reduction. *Id*.

Sauget testified that he was unaware when Defendant entered his plea that a Rule 35 motion would allow the Court to sentence Defendant below the mandatory minimum or that Defendant intended to argue for such a sentence. *Id* at 97; Evid. Hrg. Tr., Vol. 2 at 106. He did not learn either fact, he says, until over one year later in December 2005. Evid. Hrg. Tr., Vol. 2 at 227; Evid. Hrg. Tr., Vol. 3 at 97, 114.

Sauget denies making a promise during his January 2005 meeting with Eaman that he would recommend a specific sentence or that he would stand mute. At the

January meeting, Sauget says he did not discuss a specific sentence recommendation, and that he only talked about what he expected at a Rule 35 sentencing--that he would file a motion for a sentence reduction, Defendant would file a sentencing memorandum arguing that a larger reduction than the Government recommended is warranted, and the Court would decide whether and to what extent to grant the Government's motion. Evid. Hrg. Tr., Vol. 2 at 136-137, 218-219. Sauget says he used the phrase "swing for the bleachers," but denies it meant he would "stand back" at sentencing. *Id.* Rather, Sauget says he only told Defendant and Eaman that he usually does not have a lot to say at sentencing; he did not promise that he would not file a sentencing memorandum or that he would stand mute. *Id* at 137, 216-219. Sauget says he only referred to a 5K during that meeting to explain that a Rule 35 operates similarly. *Id* at 136, 224.

Sauget says he filed a 5K in November 2005 as a gratuitous gesture to show his good faith intentions. *Id* at 215, 230. Sauget says he decided to ask for authorization to file a 5K in early May 2005, but he did not tell Eaman until after the request was approved later that month. *Id* at 151. Sauget acknowledged he told Eaman he still intended to file a Rule 35. *Id* at 224-225. But, he advised the Court that his filing of a Rule 35 depends on 1) Defendant signing an affidavit which will aid in the extradition of the Mexican co-conspirators, 2) whether the Mexicans are extradited, 3) whether he can accomplish these things within the one year (Rule 35) time limit, and 4) Defendant giving testimony in a related matter pending in New York. *Id* at 226. Sauget says he made it clear to Defendant during the initial debriefing that Defendant would be required to testify whenever asked, and that he had discussions with Eaman after Defendant's

18

Grand Jury testimony about Defendant testifying against the Mexicans and conspirators in New York. Evid. Hrg. Tr., Vol. 3 at 102-104.

With regard to the forfeiture amount, Sauget says he never promised that Defendant would pay the same amount as Sokolov; in fact, he never discussed the forfeiture amount with Defendant, just Nash and Eaman. *Id* at 157, 233-234. Per Sauget, the agreement that Defendant would pay $675,000 was the result of negotiations with Eaman prior to Defendant's Grand Jury testimony. *Id* at 234.

Sauget testified that he only filed a response to Defendant's sentencing memorandum because he was directed to do so by the Court. Notwithstanding the Court's directive, Sauget says he was not precluded from filing the memorandum because he never agreed to stand mute on sentencing.

### F. *Kastigar* Violation

The only *Kastigar* violation Defendant claims is Sauget's attachment of drug ledgers seized from Defendant's home to the Government's Response to Defendant's Confidential Sentencing Memorandum. Sauget advised in the Response that Defendant received the ledgers from one of the Mexican co-conspirators and that the ledgers documented the quantity and cost of certain drug shipments. Sauget asserted that the ledgers demonstrate Defendant's knowledge of the inner workings of the scheme. Defendant says (and Kostovski and Eaman testified) that he identified those ledgers and what they represent during his debriefing. Evid. Hrg. Tr., Vol. 1 at 143-144, 169-171. Sauget acknowledged that Defendant explained the ledgers to him. Evid. Hrg. Tr., Vol. 2 at 212.

### G.    Remedies Sought

To remedy the Government's alleged violations, Defendant "requests specific performance with an initial sentencing disposition in the range of 10 to 12 years, and [that] the [G]overnment . . . [be] ordered to file a Rule 35 requesting a substantial reduction in [his] sentence." Def. Proposed Findings br. at 12. The Government disputes the factual basis of Defendant's claim and also argues that 1) the absence of the alleged agreement in the Rule 11, 2) the integration clause in the Rule 11, and 3) Defendant's affirmative assertion during the plea colloquy that no additional promises were made, preclude him from making a contrary claim now. Alternatively, the Government asserts that its memorandum was filed at the direction of the Court, and that it only corrected factual errors asserted by Defendant.

### III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based on the papers filed and the Court's assessment of the weight to be given to each witness' testimony, the Court resolves the factual conflicts as follows:

### A.    Findings of Fact

**There was no agreement that the Government would file a 5K or 3553(e) motion, make a sentence recommendation of 10 to 12 years at sentencing or via Rule 35, or stand mute**

1.    No final plea agreement or firm offer was reached during Nash's representation of Defendant; the only offer discussed--a 5K with a sentence recommendation of 10 to 12 years--was contingent upon supervisory approval, and Sauget never stated or otherwise affirmatively indicated that such approval was obtained.

2. Notwithstanding the dispute over whether Sauget extended a firm 5K offer after Kostovski became lead counsel, around August 2004, Kostovski admits that the offer was withdrawn several weeks before Defendant pled on November 30, 2004. Even when the 5K was discussed, Sauget did not promise to also file a §3553(e) motion to permit the Court to impose an initial sentence below the Guidelines.

3. Kostovski admits that on November 19, 2004 Gershel only offered to file a Rule 35 motion, which would necessarily be filed post-sentencing.

4. Kostovski admits that Gershel never stated that the Rule 35 was offered as a means to reinstate a 5K offer.

5. Kostovski admits that Gershel did not explicitly agree that the Rule 35 sentence recommendation would be for 10 to 12 years and there is no basis for her assertion that such an agreement was implicit.

6. If she had doubt before, Kostovski understood by the November 19th meeting with Gershel, and certainly by the conclusion of the November 30, 2004 discussion she and Defendant had with Sauget in the lockup, that the Government's only offer was for a post-sentencing Rule 35 motion, which was contingent on Defendant's continued cooperation. To the extent Kostovski believed Sauget agreed to file a 5K and recommend either the

"Sokolov deal" or a sentence of 10 to 12 years at the initial sentence, there was no basis for her belief since the undisputed evidence is that the 5K offer was withdrawn before the plea and she admits that a §3553(e) was never even discussed.

7.    Indeed, as late as November 23, 2005--nearly a year after entering his plea--Defendant states "Allen Ozdemir cooperated extensively with the government, providing all information requested by the government, **before his guilty plea**, <u>without any acceptable plea offer on the table</u>." Def. Confid. Resp. to Gov't Reply and to Gov't's 5K Motion at 1 (emphasis added).

8.    Defendant's claim that, during the lockup meeting, Sauget promised to recommend the "Sokolov deal" (via a Rule 35) is not credible. Defendant did not advise the Court of any such promise when pointedly asked during the plea, and he stated before the Grand Jury five months after the plea that no specific sentence was promised.

9.    There was no agreement prior to the plea that the Government would stand mute at Defendant's initial sentencing. Kostovski and Defendant's claim to the contrary is not credible for several reasons: 1) Kostovski's own testimony indicates that plea negotiations were fluid from the time she was hired until Defendant entered a plea; 2) the only time Kostovski recalls Sauget making an alleged promise to stand mute was two months prior to the plea,

22

but it was not formalized in any manner or even discussed again during the several meetings which occurred thereafter; and 3) most significantly, Kostovski does not recall revisiting the issue in the lockup when they reviewed the final terms of the plea agreement.

10. There was no agreement prior to the plea that the Government would stand mute at a Rule 35 sentencing. Kostovski says she and Sauget only discussed the issue in September 2004, which (according to her own testimony) was before they had any discussion about a Rule 35 motion. Therefore, Sauget's alleged promise to stand mute could have only been in the context of the 5K motion being considered at the time.

11. There was no post-plea agreement that the Government would stand mute at Defendant's initial sentencing. Eaman says that Sauget made such a promise during the January 2005 meeting and during a second meeting. However, Eaman did not give the context or date of the second discussion, and when Sauget's alleged comments in January 2005 are considered in the context of the agreements Eaman believed had been struck up to that point, there is no merit to his claim that he believed Sauget's alleged offer applied to the initial sentencing. That is, Eaman admits that his only expectation going into the January meeting, based on his conversations with Nash and Kostovski, was that Sauget would file a post-sentencing Rule 35 motion with a sentence recommendation

23

of 10 to 12 years. He understood that the offer to file a 5K was withdrawn. Therefore, when Sauget allegedly stated during the January 2005 meeting that he would not oppose any sentence request Defendant made after he (Sauget) filed a motion for "downward departure," Eaman could not have believed that Sauget was referring to the initial sentencing because the only "downward departure" motion promised was a Rule 35 *post*-sentencing motion.

12.   The Court is not persuaded that there was a post-plea agreement that the Government would stand mute at a Rule 35 sentencing. It is disputed whether Sauget promised to "stand back" at sentencing as Eaman claims, or if he simply stated that he usually does not have much to say at sentencing as Sauget claims. However, even if Eaman's testimony were credited, the statements he attributes to Sauget are too ambiguous to establish a meeting of the minds. The intent of Sauget's alleged promise that he would "stand back" while Defendant "swing[s] for the bleachers" is not apparent on its face or by its context, since it is unclear what prompted Sauget's alleged comments.

13.   The Government did not, during pre- or post- plea negotiations, agree to recommend a specific sentence via Rule 35. Kostovski admitted during the plea hearing that neither Sauget nor Gershel committed to a specific sentence recommendation, and there is no basis for her claim during the evidentiary hearing that Gershel

24

implicitly promised (during the November 19, 2004 meeting) to recommend 10 to 12 years. That is, Kostovski admits that Gershel never explicitly said that the Rule 35 was offered to effectively reinstate the prior 5K (10 to 12 year) offer, and she does not cite any statements or other evidence from which one could reasonably infer that Gershel implied as much. Eaman, likewise, admits that Sauget never said what sentence he would recommend.

14. The Government does not refute Defendant's claim that he identified the ledgers and what they represent (in connection with the conspiracy) during his debriefings.

15. The Government made an affirmative promise during the plea hearing, via Sauget, to file a Rule 35 motion once Defendant's cooperation is complete. The authority for him to do so was implicit, inasmuch as Gershel (Chief of the Criminal Division) participated in the meeting held before Defendant's plea where the Rule 35 was discussed, and Sauget represented at the plea hearing that he had discussed the possibility of a Rule 35 in this case directly with the United States Attorney.

16. But, Defendant has not established that there was an agreement prior to the plea (or afterwards) that his cooperation obligations would be satisfied once he completed his Grand Jury testimony. Defendant only testified that he *interpreted* Sauget's repeated reference to the Grand Jury during the lockup meeting to mean that

25

he was not expected to provide other assistance. There is no

evidence to refute Sauget's testimony that he advised Defendant

during the initial debriefing in June 2004 that he (Defendant) would

be required to provide testimony whenever asked, which is

consistent with the broad cooperation language the Government

typically includes in plea agreements:

> Truthful Information and Testimony. Defendant
> will provide truthful and complete information
> concerning the facts of this case known to him.
> Defendant will provide full debriefings as
> requested to the U.S. Attorney, and federal, state,
> and local law enforcement agencies. Defendant
> will provide truthful testimony at all proceedings,
> criminal, civil, or administrative, as requested by
> the U.S. Attorney. Such testimony may include,
> but is not limited to, grand jury proceedings, trials,
> and pretrial and post-trial proceedings.
> Defendant agrees to be available for interviews in
> preparation of all testimony. . . . Defendant
> understands that this obligation to provide
> cooperation continues after sentencing and that
> failure to follow through constitutes a breach of
> this agreements.

Gov't Exh. 20.

## B.  Conclusions of Law

### i.  **Evidentiary Hearing Warranted**.

17.  Defendant asserts that he was induced to enter a plea when

Sauget orally promised:  1) that Defendant's original sentence

would include a substantial departure (presumably via a 5K motion)

to 10 to 12 years; 2) the Government would not oppose

Defendant's request at sentencing for a reduction to the mandatory minimum; and 3) to file a Rule 35 motion which would permit a substantial departure below the mandatory minimum. Def. Proposed Findings of Fact, ¶¶2, 8. These alleged promises were not included in the Rule 11 Plea Agreement and Defendant failed to disclose them when the Court inquired during the plea hearing.

18.   "Ordinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty." *United States v Sanderson,* 595 F.2d 1021 (1979).

19.   "An integration clause [also] normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself." *United States v Hunt*, 205 F.3d 931, 935 (6th Cir. 2000). *See also United States v Smith*, 429 F.3d 620, 630 (6th Cir. 2005); *Peavy v United States*, 31 F.3d 1341, 1345 (6th Cir. 1994).

20.   However, if there is objective evidence to support a defendant's claim that additional promises were made which were not disclosed to the court or included in the written agreement, further inquiry about the complete terms of the plea agreement is permitted. *Smith*, 429 F.3d at 630; *United States v Blackner*, 721 F.2d 703, 709 (10th Cir. 1983); United *States v Roberts*, 570 F.2d 999, 1007

27

(D.C. Cir. 1977). The Court may conduct an evidentiary hearing if the issue turns upon credibility. *Blackledge v Allison*, 431 U.S. 63, 82 n.25 (1977); *Sanderson*, 595 F.2d at 1021.

21.     Here: a) the plea agreement is silent regarding the promises alleged; b) there is an integration clause in the plea agreement which states that it "is the entire agreement between defendant and the U.S. Attorney with respect to the charges . . . in this case[;]"[1] and c) Defendant affirmatively stated during the plea colloquy that no promises beyond those disclosed on the record had been made.

22.     However, an evidentiary hearing was warranted because: a) Defendant presented unrefuted affidavits from two of his attorneys who said Sauget promised not to oppose any request Defendant made for a sentence reduction, and b) Defendant's claim that the plea agreement did not contain all of the terms agreed upon was bolstered by the fact that the Government deviated from the written agreement by orally stating at the plea hearing its intention to file a Rule 35 motion and by subsequently filing a 5K motion requesting a departure from the stipulated guideline range in the plea agreement.

**ii.     While the Government is Bound by Agreements which Induce a Defendant to Enter a Plea, even if those Agreements were not included in the Plea Agreement or Disclosed to the Court,**

---

[1]Rule 11 Plea Agreement at ¶6.

**there was no *Santobello* Violation here.**

23.     "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v New York*, 404 U.S. 257, 262 (1971).

24.     If the Court finds that there was an oral agreement not included in the plea agreement, the Court must "look to what the parties . . . reasonably understood to be the terms of the agreement" to determine whether it was breached. *United States v Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993)(*quoting United States v Carbone*, 739 F.2d 45, 46 (2nd Cir. 1989)). *See also United States v Rewis*, 969 F.2d 985, 988 (11th Cir. 1992).

25.     "Plea agreements are contractual in nature. In interpreting and enforcing them, [the Sixth Circuit] uses traditional principles of contract law." *United States v Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

26.     "There can be no contract without a 'meeting of the minds.' Whether or not there was a 'meeting of the minds' depends, of course, on what the parties to the plea agreement intended." *United States v Robison*, 924 F.2d 612, 614 (6th Cir. 1991)(citation omitted).

27.     It is settled that an agreement not to take a position on sentencing

is binding on the government. *Santobello*, 404 U.S. at 262. Such an agreement precludes the government from asserting legal arguments in opposition to a request for a lesser sentence. *See United States v Mondragon*, 228 F.3d 978 (9th Cir. 2000)(oral arguments offered to rebut defendant's assertion at sentencing hearing that his criminal history was petty, breached agreement to make no recommendation regarding sentence); *United States v Brye*, 146 F.3d 1207 (10th Cir. 1998)(agreement to defer to court on sentencing breached when government made oral argument, presented testimony and submitted a memorandum opposing defendant's request for downward departure); *United States v Corsentino*, 685 F.2d 48 (2nd Cir. 1982)(government memo and oral argument submitted with apparent intent to influence court breached agreement to take no position on sentencing).

28. However, an agreement to take no position on sentencing does not preclude the Government from merely correcting factual errors. *See Brye*, 146 F.3d at 1211; *United States v Block*, 660 F.2d 1086, 1091 (5th Cir. 1981); *United States v Bronstein,* 623 F.2d 1327, 1330 (9th Cir. 1980). Indeed, courts have held that the government has a duty to correct factual inaccuracies relevant to sentencing, even if it has agreed not to take a position. *Block*, 660 F.2d at 1091-1092 (footnotes and citations omitted). *See also Brye*, 146

F.3d at 1211. But, the government is not permitted to go further by "attempting to influence the sentence by presenting the court with conjecture, opinion, or disparaging information already in the court's possession." *Block*, 660 F.2d at 1091. *See also Bronstein*, 623 F.2d at 1330.

29. When the government breaches a plea agreement, the breach may be remedied by either specific performance, *i.e.,* sentencing before a different judge, or allowing the defendant to withdraw his plea. *Santobello*, 404 U.S. at 263; *Peavy,* 31 F.3d 1346. "The choice between these remedies is not up to the defendant but, rather, rests in the sound discretion of the district court." *Peavy,* 31 F.3d 1346.

30. Defendant failed to establish that the Government agreed to make a 5K recommendation of 10 to12 years or that it would stand mute at Defendant's initial (or Rule 35) sentencing. Therefore, Defendant failed to prove a *Santobello* violation on either ground.

### iii. While the Government did Promise to make a Rule 35 Motion, Breach Claims are Premature.

31. Defendant established that the Government promised, without reserving discretion, to file a Rule 35 motion once his cooperation is complete. Presumably, this promise was made to induce Defendant to plead guilty.

32. In *United States v Benjamin*, 138 F.3d 1069 (6th Cir. 1998),

31

defendant alleged that the government breached its promise to file a 5K motion. The plea agreement stated that "the government will . . . move for a four-level reduction for substantial assistance," unless defendant committed other crimes while cooperating or otherwise violated the agreement. 138 F.3d at 1073. The government later refused to file a 5K motion because it believed defendant was involved in a homicide. The district court specifically found the government failed to prove that defendant was involved by a preponderance. Nonetheless, it declined to require the government to file a 5K motion; it said there was probable cause to believe defendant breached the plea agreement by committing a crime. The Sixth Circuit reversed. The *Benjamin* Court held that, when the government reserves discretion to determine whether a 5K motion is appropriate, the district court can only review the government's refusal to do so if unconstitutional motives are alleged. *Id*. But, "in order to induce a defendant to enter a plea agreement, the government may bargain away its discretion and simply promise to make the substantial assistance motion. The government is then obligated to make the motion unless the defendant breaches the agreement. The district court has the authority to determine whether a breach has occurred." *Id* at 1073-1074 (citations omitted). The *Benjamin* Court then found that the government did not reserve discretion to not file a

5K, inasmuch as the government stated that it "will" file the motion: "The plea agreement between the government and Benjamin did not reserve the government's discretion to make the motion for a downward departure. Instead, it unequivocally stated that 'if the defendant fully complies with all his obligations as defined and described in this Plea Agreement, the government *will*, at the time of sentencing move for a four-level reduction for substantial assistance.' . . . . The use of 'will' indicates that the parties did not intend that the government retain its discretion." *Id* at 1074.

33. "Before the government may decline to fulfill its obligations under a plea agreement, it must establish the defendant's breach by a preponderance of the evidence. *Id.* Because the trial court in *Benjamin* said the evidence did not rise to the level of proof by a preponderance of the evidence, the case was remanded for the trial court to sentence defendant with the benefit of the government's substantial assistance motion.

34. Here, during the plea hearing Sauget explicitly reserved the Government's discretion to decide the particular sentence it would recommend, but he was unequivocal in his assertion that the Government would file a Rule 35 at the conclusion of Defendant's cooperation. None of Sauget's comments could reasonably be construed to reserve the Government's discretion about whether to file a Rule 35.

33

35. Therefore, the Government is bound by Sauget's promise to file a Rule 35 motion once Defendant's cooperation is complete, and can only be relieved of its obligation to do so if it establishes by a preponderance that Defendant failed to cooperate as he is required to do so.

36. To the extent the Government contends that it is not bound by Sauget's promise because he failed to get supervisory approval to make such a promise and, therefore, lacked the authority to bind the Government, there is no merit to the claim. "[T]he express grant of 'authority to prosecute' implies the power to make plea agreements incidental to prosecution.'" *Margalli-Olvera v Immigration and Naturalization Service*, 43 F.3d 345, 353 (8th Cir. 1994)(*quoting Thomas v Immigration and Naturalization Service,* 35 F.3d 1332, 1339 (9th Cir. 1994)). Furthermore, while the United States Attorney's Manual, Title 9-27-400, does require supervisory approval of a Rule 35 motion, Alan Gershel, Chief of the Criminal Division, was part of the Rule 35 discussion and implicitly extended approval authority.

37. Defendant's assertion that the Government breached its agreement with respect to the Rule 35 motion is premature, inasmuch as Rule 35 motions are never made before a Defendant is sentenced, and can be made as late as one year after sentencing. FRCrP 35(b). Defendant has yet to be sentenced.

iv.  **There was a *Kastigar* Violation.**

38.   Under *Kastigar,* "[g]rants of use and derivative use immunity

prohibit the use of compelled testimony and evidence derived

therefrom in later criminal proceedings." *United States v Overmyer,*

899 F.2d 457, 462 (6th Cir. 1990).

39.   The government is prohibited from using immunized testimony in

any manner, unless it can establish by a preponderance that the

evidence was "derived from a legitimate source wholly independent

of the compelled testimony." *Kastigar*, 406 U.S. at 460; *Overmyer*,

899 F.2d at 462-463.

40.   The Government does not dispute that it cited information gleaned

during debriefings--the nature and context of the ledgers found in

Defendant's home--in its Response to Defendant's Confidential

Sentencing Memorandum.

41.   The Government does not offer evidence that the information was

derived from an independent source.

v.   **Defendant Failed to Establish Prosecutorial Vindictiveness**.

42.   "[D]ue process prohibits an individual from being punished for

exercising a protected statutory or constitutional right." *United*

*States v Poole*, 407 F.3d 767, 774 (6th Cir. 2005), *cert. den.*, 126

S.Ct. 279 (2005).  "Thus, a criminal prosecution which would not

have been initiated but for vindictiveness is constitutionally

prohibited." *Bragan v Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001).

43. There are two ways to establish prosecutorial vindictiveness: "First, a defendant may demonstrate 'actual vindictiveness,' *i.e.,* he may establish through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights. . . . Second, a defendant may establish that, in the particular factual situation presented, there existed a 'realistic likelihood of vindictiveness' for the prosecutor's action." *Bragan*, 249 F.3d at 481 (citations omitted).

44. A showing of actual vindictiveness is "exceedingly difficult to make." *Id.* A defendant must present objective evidence the prosecutor acted in order to punish him for exercising his legal rights. *United States v Roach,* 502 F.3d 425, 443 (6th Cir. 2007). Defendant presents no such evidence.

45. A defendant can only establish a realistic likelihood of vindictiveness by showing that: "(1) the prosecutor has 'some stake' in deterring the petitioner's exercise of his rights and (2) the prosecutor's conduct was somehow 'unreasonable.'" *Id* at 482.

46. If the defendant proves a realistic likelihood of vindictiveness, the court must presume an improper vindictive motive. *Id* at 481. The burden then shifts to the government to disprove or justify the

36

challenged action. *Id* at 482.

47. "If the government fails to present evidence sufficient to rebut the presumption, the presumption stands and the court must find that the prosecutor acted vindictively." *Id.* The court may then dismiss the charges or provide another appropriate remedy. *Id.*

48. If, however, the government meets its burden, the defendant "must prove that the offered justification is pretextual and that actual vindictiveness has occurred." *Id.*

49. In his Motion, Defendant asserts that the Government's Response to his Sentence Memorandum and its act of "pushing back from its earlier position with respect to the sentence to be received" is evidence of prosecutorial vindictiveness. Def. br. at p. 14. There is no support for his claim.

50. First, it is not clear that Defendant can base a prosecutorial vindictiveness claim on an alleged breach of a plea agreement. Such claims are typically asserted to challenge a prosecutor's charging decision. *United States v Roach*, 502 F.3d 425 (6th Cir. 2007); *United States v Poole*, 407 F.3d 767, 774 (6th Cir. 2005), *cert. den.*, 126 S.Ct. 279 (2005); *Bragan v Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001). Defendant did not cite, and the Court did not find, any cases where the claim stemmed from an alleged breach of a plea agreement.

51.  Second, even if such a claim is viable, Defendant failed to establish that the Government breached the terms of the plea agreement.

## IV.  CONCLUSION

Defendant fails to establish:  1) a *Santobello* violation, 2) a Rule 35 violation, or 3) prosecutorial vindictiveness.  The Court declines to require the Government to make a 5K recommendation that is different from what it has already made.  Further, the Court declines to order the Government to make a specific sentencing recommendation as part of the Rule 35 motion it is required to make unless it proves by a preponderance that Defendant failed to cooperate.

A *Kastigar* violation is established.  As a remedy, the Court strikes that portion of the Government's Response to Defendant's Confidential Sentencing Memorandum that reveals information obtained from immunized testimony.  It will not be considered by the Court in fashioning Defendant's sentence.

The Court rules as follows with respect to related motions filed by the Government:

A.  Motion to Take Judicial Notice--The Government asks that the Court take judicial notice of the fact that it directed the Government to file a Response to Defendant's Confidential Sentencing Memorandum.  The motion is **GRANTED**.

B.  Motion of the United States to Strike the Affidavit of Suzanna Kostovski-- Ms. Kostovski filed an affidavit after the evidentiary hearing offering supplemental testimony.  Kostovski stated that she held up Defendant

and Sokolov's Rule 11 agreements for Defendant to read in the lockup on November 30, 2004. She also recounted her interaction with Sauget in another case. The Government asks that Kostovski's affidavit be stricken as an improper expansion of the record which is not subject to cross examination. The Court notes that Kostovski's affidavit responds to testimony given by Defendant and Sauget after she testified. The Court will allow it. This motion is **DENIED**.

C.    Motion of the United States to Strike the Affidavit of Michael S. Friedman-- Mr. Friedman is one of Defendant's attorneys who represented him at the evidentiary hearing. Friedman did not testify at the hearing. Following the hearing, Friedman submitted an affidavit recounting a debriefing session he attended in April 2006 during which he says Defendant provided information regarding the parallel investigation in New York and that the interviewing Agent was pleased. The Government asks that the affidavit be stricken because Friedman offers testimony on a disputed issue-- whether Defendant has fully cooperated with respect to the New York investigation--which is not subject to cross examination, and because it is impermissible for an attorney to act as counsel and a witness. The Court agrees with the Government. This motion is **GRANTED**.

**IT IS ORDERED.**

Dated: November 30, 2007          s/Victoria A. Roberts
                                  Victoria A. Roberts
                                  United States District Judge

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 30, 2007.

s/Carol A. Pinegar
Deputy Clerk

40